Good morning, Your Honors. May it please the Court, my name is Jennifer Bennett and I represent the petitioner-appellant, Mr. Stephen Teneng. He's a 49-year-old male, native and citizen of the country of Cameroon. He's married to a United States citizen wife and has two minor United States citizen children. I'll give you a brief history. He's had a long history of proceeding in the immigration court. He first arrived in this country in 1986 as a young 20, 26-year-old male on a student visa. He was actually in proceedings in immigration court in 1988 in Oakland, Louisiana, where the judge granted his request for withholding of removal and deferral of removal under the Convention Against Torture. In the decision, in the oral decision, the judge granted him both forms of relief. However, in the minute order, it was not clear which form of relief he was granted. In 2001, based on the deferral under CAT, he received adjustment of status, which was approved. However, he was then convicted on federal charges in 2003. Upon his release from imprisonment in 2008, Homeland Security recommenced proceedings against him. Those were actually recommenced in El Paso, Texas, but those proceedings were not commenced properly, so they were terminated and recommenced a second time. Venue was then changed to Chicago. In 2011, he appeared, 2010 and 2011, he appeared before Judge Vinokur. He sought withholding of removal and deferral of removal under the Convention Against Torture once again, since the government terminated his adjustment of status based on the unclarity of the minute order from the judge in Oakland, Louisiana. He also sought a 212H waiver in order to adjust status in 1999 in Louisiana. In 2014, actually just before coming here, he did have an approved I-130 from his current U.S. citizen wife. This is a man who simply hasn't been given a fair chance. He hasn't been given a fair opportunity to present his case on the merits and be heard. The immigration judge and the board erred in three very specific ways. First and foremost, the judge held that the respondent, or excuse me, the petitioner in this case, was not credible, and therefore refused to consider his eligibility for deferral of removal under the Convention Against Torture. Per the immigration judge, the respondent's willingness to participate in extensive and relatively sophisticated fraudulent activities for personal gain undermined the believability of his testimony. As we know, and as your honors are aware, Section 208B1Biii permits inquiry into inaccuracies and inconsistencies, even if they do not go to the heart of an This case, there were no questions that even remotely went to the claim, let alone to the heart of the claim. The judge and the board upheld the judge's decision, and the judge simply decided that the petitioner was a criminal, and therefore not credible. While we agree that he can question things that don't necessarily go to the heart, that are more remote issues, they still have to be related to the claim. Pursuant to Pavlov versus Holder, which the board cited in their decision, we also can't be surprised if a petitioner has filed a frivolous asylum application, and later tells different lies to protect himself. Again, that doesn't apply in this case. The petitioner had been granted withholding of removal and deferral of removal under the Convention Against Torture in 1999 through a full two-day trial in which he was deemed credible. Unfortunately, due to procedural error and technicalities, he again, once proceedings were recommenced, he filed and completed a new Form I-589, seeking the same form of relief. He was not questioned about his credibility regarding his claims. It was simply determined- We certainly agree, Your Honor, it does cast doubt. However, we believe that he has to be given a full and fair opportunity to be heard, and to be determined to lack credibility. Just because he's a criminal, it's not fair to say that he's in there- What is it that he- What opportunity has he been denied? He was given a chance to introduce evidence and so on. What was denied him? Well, two things, Your Honor. His right to act for the testimony, both his testimony and documentary evidence, to actually be considered and given weight in determining whether he was convicted, that because he had a criminal history, he was- It's not just any criminal history. He's stealing, identifying documents and information from mentally disabled and using those to try to get a passport and other documents that would allow him to stay in the country. That goes right at the heart of his credibility in an immigration hearing, I would think. That doesn't seem unreasonable to me, that an immigration judge puts a lot of weight behind that. Your Honor, I think there was a question about whose passports or identity he was actually taking. Oh, for someone else then. He was stealing identity of the mentally disabled to help get passports for someone else? We do not agree that it was the mentally disabled. However, I understand your point, Your Honor. That's the nature of conviction, the information about conviction. But the questions, there were no questions related to whether or not he would be tortured. We're talking about a very real and serious danger. And yes, it casts doubt. It undermines his potential credibility, his criminal past. But he served his time- What is his best evidence that he would be tortured if sent back to Cameroon? Well, first of all, he presented a two-day hearing in which, in 1999, which it's- I'm asking you, what is his best evidence? Well, his best evidence is his testimony- His own testimony? As well as- He's not very good to evidence at all. As well as substantial documentary evidence, which he supported as well, affidavits from friends and family members and documentary- Well, that isn't worth a lot. He may have forged them, right? But he still needs to be given an opportunity to present those, Your Honor. What opportunity? I don't understand. What opportunity was denied him? Well, Your Honor, we believe, as I've said, that he didn't get a chance to actually prove to be credible. It was just- What is it that he was denied? What did he want to do? What evidence did he want to present that was not permitted? Well, he would like to have been asked questions about his actual torture and given a chance- What did he ask? He wants to be able to ask questions? What are you talking about? He wants to be given the chance to answer questions that are asked that actually relate to his claim and not his criminal- He wants a question? What does that mean? Well, Your Honor, I guess what I'm saying is that he served his criminal sentence and the judge only seems to be concerned with his criminal case. He's already served the sentence. This is now- That's not my question. What is his best evidence? His best evidence, Your Honor, is combined testimony, affidavits and documentary evidence including country reports from Cameroon. How does the country report link up with him? The country report shows the torture that he- Why him? Why would he be? Cameroon doesn't torture everybody. I understand, Your Honor. He proved that through substantial- in 1999, through substantial testimony and documentary evidence as well as at present, and I see that my time may be up. I'll finish with my answer. Sure. So, he just wants to be given the chance- or he deserves to be given the chance under the law to have a full and fair hearing on these questions that you're asking. I don't understand you. I'm asking you, what is his best evidence that he risks being tortured if he's sent back to Cameroon? His best evidence, Your Honor, is his testimony and the documentary evidence. Well, his testimony is not worth a lot. And if the documents are just affidavits from his pals, that's not worth a lot. So the question is, is there something more? Well, Your Honor- What is there in the country report that bears on his vulnerability to being tortured if he's returned? Your Honor, the country report is very specific about the ongoing tension under the Paul Bier regime. But what is it about him that- They don't, Your Honor. So what is it about him that would make him a particular target? That's precisely, Your Honor, what we wanted the judge to give him an opportunity to show. What is his evidence that he is a target? I don't understand you. Well, Your Honor, he's provided- he attempted to provide testimony, but he was stopped. And that's where we argue that the immigration judge- What do you mean, testimony? There's no documents? He provided documents as well, Your Honor. Which were not considered, the judge and the board. So is there documentary evidence? Not documents created by him or his pals. But is there real documentary evidence that he is in some group that makes him vulnerable, or what? There was a substantial amount of documentary evidence, Your Honor. That's in the record? That is in the record, correct. Okay. Well, thank you very much. Thank you, Your Honor. Mr. Brady? Good morning, Matt. Please the court, Surel Brady for the Attorney General. The overarching issue in this case is whether the court has jurisdiction over any of the issues at all. The reason is the Criminal Alien Review Bar and 8 U.S.C. Section 1252, A.2.C., which provides that aliens convicted of certain offenses are not entitled to have jurisdiction over their petitions for review. Petitioner was convicted in 1999 of one such offense, forgery. It's clearly covered by the Alien Review Bar. Therefore, the court lacks jurisdiction to review the final order of removal against Petitioner in toto. The exception to the jurisdictional review bar would be a legal or constitutional claim. But respondents admits that Petitioner has not in actuality raised a legal or constitutional claim regarding any of the bases of his final order of removal. He does not dispute, for example, that his forgery conviction constitutes an aggravated felony. So that is not a legal issue for the court to decide. He does not raise a colorable legal issue or constitutional claim regarding the denial of a request for a continuance of his hearing. Instead, he argues that the immigration judge didn't weigh sufficient factors on their Hashmi decision to grant him a continuance. But denial of a continuance is a purely discretionary determination that does not pose a legal or constitutional claim. He does not raise a colorable legal or constitutional claim regarding the finding that two of his convictions in 2003 constitute particularly serious crimes that render him ineligible for withholding of removal. The immigration judge determined that the circumstances underlying the convictions, the type of offenses, and the sentence Petitioner received rendered the convictions particularly serious. That is not subject to review by this court. Finally, Petitioner does not raise a colorable legal issue or constitutional claim regarding the finding that he did not carry his burden of proof for deferral of removal under the Convention Against Torture. He challenges the finding that his criminal history casts doubt on his credibility, but that too goes to facts, not law. The immigration judge, for example, considered that in his testimony in 2011, Petitioner lied about the nature of his criminal convictions. One of the issues that was raised in one of the earlier questions was whether he in fact stole the identity of a mentally disabled person. That was exactly what he pled to in 2003, but at this hearing he testified that, in fact, the person was not mentally disabled, was only physically disabled. And he questioned some of the other circumstances that were laid out in the 2003 guilty plea that he signed. He challenges the assessment that not all of his evidence was credible, but that that is a factual assessment and not a legal claim. Petitioner challenges the assessment that there's not evidence that the Cameroon government is interested in harming him, but that also is a factual assessment, not a legal issue. The assessment depended on facts, that Petitioner showed only that he attended one demonstration against the Cameroon government in New York in the early 1990s, that he was active in the Cameroon Student Association for some time in the 1990s, and that he wrote some articles critical of the Cameroon government in the 1990s. The immigration judge's assessment of those facts does not establish that Petitioner, more likely than not, would be tortured, and that's a factual determination, and does not present a legal issue. Today, and in his brief, Petitioner makes non-specific claims that he was not given a fair hearing, but he does not identify in any respect how he was deprived of the opportunity to present any evidence. He does not identify any evidence that he was prevented from presenting. He did not make a claim to the immigration judge, for example, that he had additional evidence that he was not given an opportunity to present. Casting a discretionary argument, as the Court has held, in the garb of a constitutional claim, does not present a colorable legal issue, and the same must be said of factual determinations. Casting them in the garb of a constitutional claim does not make out a colorable constitutional claim. The bar to judicial review of the final order in this case we submit applies equally to the denial of Petitioner's request for a deferral of removal under the Convention Against Torture. Two decisions of this Court in 2005 and 2006, the Hamid and Petrov decisions, held squarely that in the case of an aggravated felon, the Court does not have jurisdiction to review the denial of deferral of removal. Respondents submit that those holdings stand today. In the Hamid case, the Court said there's no basis within the limited scope of our jurisdiction to consider the claims of aggravated felons to find that the immigration judge erred. The Petrov decision has similar language. Hamid and Petrov are consistent with the decisions of ten other courts of appeals that considered denials of deferral of removal and held that the criminal alien bar precludes jurisdiction. Respondents admit that the dicta and later decisions of this Court are not sufficient to override the precedential effect of Hamid and Petrov. Hamid and Petrov remained good law up until 2006. They remain good law today. The Isak decision in 2010 purported to question whether the Court had jurisdiction in a deferral of removal case. That Court's characterization of deferral of removal is not binding on this case because Isak did not in fact seek deferral of removal. The Wanjiru case in 2013 also is not on point. The government conceded in that case that the criminal alien bar wasn't at issue because Wanjiru was not convicted of offenses that put it within the criminal alien bar. Therefore, the question was not squarely presented as regards deferral of removal jurisdiction. Finally, the Moral Salazar decision in 2013 also is not on point. The issue in that case, even though Moral Salazar had been convicted of felonies, was not deferral of removal, but it was his request for a sixth continuance of his proceedings. Counsel, you may have referred to it, but what about the Wani v. Seidt v. Holder case? I believe that went off in jurisdiction under 1252A2B2. rather than 1252A2C, Your Honor. There was some discussion in their reference, if you will, but I believe that went off on a different statutory provision. Deferral of removal is not separate and apart from a final order of removal. CAD withholding is also based on regulations to implement the Convention Against Torture, and the Court has held that it does not have jurisdiction to review a denial of withholding of removal under the CAD. A final order of removal encompasses all decisions that are ancillary to it, such as denial of deferral of removal. A request for deferral of removal, in fact, only arises because an alien has a final order of removal. Therefore, it's subject to the jurisdictional limitations in 1252, which include the jurisdictional bar to criminal aliens. Unless there are questions, Respondent submits on the brief and requests that the Court dismiss the petition for review for a lack of jurisdiction. Okay, thank you very much, Ms. Brady. Ms. Bennett, your time has expired. You can have another minute if you'd like. Thank you, Your Honors. I would just simply like to remind the Court that in addition to the issues we described, Mr. Taneng was also denied a continuance. And that denial of the continuance, the immigration judge and the Board erred in improperly applying the case law and evaluating whether a continuance should have been granted. Based on his current approved I-130 petition from his U.S. citizen wife, which I mentioned in the beginning of my argument, he would potentially be eligible to pursue relief in the form of a 212H waiver along with his adjustment to his current U.S. citizen wife. And we would like the Court to take that into consideration. Thank you. Thank you very much, Ms. Bennett.